IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY,** | : : : : : : : : : : : | CIVIL ACTION NO. 1:16-CV-1342<br><br>(Chief Judge Conner) |
| Plaintiff | | |
| v. | | |
| **WILLIAM HACK,** | | |
| Defendant | | |

## MEMORANDUM

Plaintiff Metropolitan Group Property and Casualty Insurance Company ("Metropolitan") advances this action for declaratory judgment against defendant William Hack ("Hack"). (Doc. 1). Hack brings a counterclaim of bad faith pursuant to 42 PA. CONS. STAT. § 8371. (Doc. 14). Metropolitan moves to dismiss Hack's counterclaim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12"). For the reasons that follow, the court will grant the motion in part and deny it in part.

I. **Factual Background & Procedural History**

Hack resides in Neelyton, Pennsylvania with his sister. (Doc. 1 ¶ 2, 14; Doc. 14 ¶ 2, 14). Metropolitan issued a personal automobile insurance policy to Hack's sister that covers Hack. (Doc. 1 ¶ 8; Doc. 1-2 at 2; Doc. 14 ¶ 8). Shortly after midnight on December 21, 2014, a motor vehicle struck his sister's home directly below Hack's second floor bedroom. (Doc. 1 ¶¶ 9-10, 17-18; Doc. 14 ¶¶ 9-10, 17-18, 49). Hack was asleep at the time of the accident. (Doc. 1 ¶ 17; Doc. 14 ¶ 17). During

two recorded statements, Hack told insurance investigators for Metropolitan and the driver's insurance company that the force of the impact threw him out of bed causing him to hit and break a desk. (Doc. 1 ¶ 17-18; Doc. 14 ¶¶ 17-18, 23; see also Doc. 1-4; Doc. 1-5). Hack did not report any injuries the night of the accident. (Doc. 1 ¶ 17-18; Doc. 14 ¶ 17-18).

Following the accident, Hack experienced pain in his right arm and shoulder, and numbness in his fingertips. (Doc. 1 ¶¶ 17-18; Doc. 14 ¶¶ 17-18). After a few months of self-treating with Ibuprofen, Hack obtained professional treatment at his family's insistence. (Doc. 1 ¶¶ 17-18; Doc. 14 ¶¶ 17-18, 51). Hack saw an orthopedic surgeon who diagnosed him with C5 and C6 disc injuries and a pinched nerve. (Doc. 1 ¶¶ 17-18; Doc. 14 ¶¶ 17-18). Hack underwent physical therapy for his injuries at the Fulton County Medical Center. (Doc. 1 ¶ 17; Doc. 14 ¶ 17).

Hack filed an insurance claim with Metropolitan for services rendered to treat his injuries arising from the motor vehicle accident. (Doc. 14 ¶¶ 16, 21-23, 52). As requested, Hack provided Metropolitan with medical bills and authorizations, photographs of the vehicle and home involved, a copy of the police accident report, a diagram, and a recorded statement. (Doc. 14 ¶¶ 43, 53, 56, 58, 59). Metropolitan retained an accident reconstruction expert in furtherance of its investigation into Hack's claim. (Doc. 1 ¶ 26; Doc. 1-8). The expert's report indicates that the accident likely did not cause Hack's injuries. (Doc. 1 ¶ 28; see Doc. 1-8).

Metropolitan filed a complaint on June 30, 2016 seeking declaratory judgment and punitive damages for common law fraud. (Doc. 1). In its complaint, Metropolitan alleges that Hack made a fraudulent insurance claim and

misrepresented the cause and extent of his injuries. (Id. ¶¶ 30-35). The court dismissed Metropolitan's fraud claim pursuant to the gist of the action doctrine. (Doc. 12).

Hack filed an answer on May 22, 2017 and asserted a counterclaim against Metropolitan for bad faith under 42 PA. CONS. STAT. § 8371. (Doc. 14 ¶¶ 71-78). He alleges that Metropolitan violated Section 8371 when it acted in bad faith toward Hack as follows:

> (a) By unilaterally denying William Hack's medical claims without sufficient foundation to do so;
>
> (b) By failing to utilize the ability to have William Hack to [sic] submit to a medical exam to determine the causal relationship of his injuries to the December 21, 2014, motor vehicle incident, as authorized by 75 Pa.C.S.A. § 1796;
>
> (c) By failing to communicate with William Hack's medical providers to determine the causal relationship of his injuries to the December 21, 2014, motor vehicle incident;
>
> (d) By failing to have William Hack's medical file referred to a Peer Review Organization for a determination of the reasonableness or necessity of treatment as authorized by 75 Pa.C.S.A § 1797(b);
>
> (e) By purposefully withholding from William Hack transcribed recorded statements until it was on the verge of filing suit;
>
> (f) By refusing to pay benefits under the policy when it knew, or should have known, it has no reasonable basis for doing so;
>
> (g) By failing to investigate Plaintiff's claim in good faith;
>
> (h) In being motivated by such improper purposes such as self-interest and ill-will;

(i) By conducting itself in such a manner so as to breach a known duty of good faith and fair dealing;

(j) By not attempting, in good faith, to effectuate prompt, fair, and equitable coverage of claims, once the [sic] its responsibility under its policy of insurance had become reasonably clear, in violation of 40 P.S. § 1171.5(10)(vi);

(k) By failing to affirm or deny coverage of its claims within a reasonable time after proof of loss was communicated and supplied to a representative of Metropolitan, in violation of 40 P.S. § 1171.5(10)(v);

(l) By failing to promptly provide a reasonable explanation of the basis of a denial of coverage in relation to the facts or applicable law for the denial of the claim, in violation of 40 P.S. § 1171.5(10)(xvi)[1];

(m) By instituting litigation alleging William Hack was fraudulently seeking to make claims for medical expenses;

(n) By misrepresenting to William Hack and his counsel the company's true position on the claim, in violation of 40 P.S. § 1171.5(10)(i);

(o) By failing to state its position on William Hack's claim prior to filing a lawsuit against its insured in order to deny coverage owed to William Hack;

(p) By failing to state its position on William Hack's claim for more than one year after the claim was initiated;

(q) By failing to state its position on William Hack's claim for more than six months after receiving a recorded statement from William Hack; and

---

[1] Section 1171.5(10)(xvi) does not exist. The language Hack quotes falls under Section 1171.5(10)(xiv). The court will address Section 1171.5(10)(xiv) when evaluating paragraph 77(l)'s sufficiency to state a claim upon which relief can be granted.

4

> (r) By refusing to pay claims without conducting a reasonable investigation based upon all available information, in violation of [40 P.S. § 1171.5(1)(iv)].

(Doc. 14 ¶ 77). Metropolitan filed a motion to dismiss Hack's bad faith claim. (Doc. 18). Metropolitan's motion is fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203,

5

210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## III. Discussion

Hack asserts a bad faith counterclaim against Metropolitan under Section 8371. Metropolitan seeks dismissal of that counterclaim, arguing that Section 1797 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 PA. CONS. STAT. § 1701 *et seq.*, preempts a Section 8371 claim when an insurer denies its insured first party medical benefits. We begin with a review of Sections 8371 and 1797.

### A. Statutory Framework

The Pennsylvania legislature enacted Section 8371 to protect insureds from bad faith denials of coverage. The Brickman Group, Ltd. v. CGU Ins. Co., 865 A.2d 918, 930 (Pa. Super. Ct. 2004) (citing Gen. Acc. Ins. Co. v. Fed. Kemper Ins. Co., 682 A.2d 819, 822 (Pa. Super. Ct. 1996)). In the same 1990 bill, the legislature replaced the No-Fault Act with the MVFRL in response to "concern for the spiralling [sic] consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways." Paylor v. Hartford Ins. Co., 640 A.2d 1234, 1235 (Pa. 1994); see Act of Feb. 7, 1990, No. 6, §§ 3, 18, 1990 Pa. Laws 16, 36-37. When two statutory provisions are irreconcilable, Pennsylvania's principles

6

of statutory interpretation dictate that the specific provision prevails unless the general provision was enacted later or "manifests an intention that it should prevail." Harris v. Lumberman's Mut. Cas. Co., 409 F. Supp. 2d 618, 620 (E.D. Pa. 2006) (citing 1 PA. CONS. STAT. § 1933).

Pennsylvania's bad faith statute provides a private cause of action against insurance companies for bad faith denials of insurance coverage. 42 PA. CONS. STAT. § 8371. A successful Section 8371 bad faith claim permits an award of interest on the amount of the insurance claim, punitive damages, and costs and attorneys' fees. Id. "[A]ny frivolous or unfounded refusal to pay proceeds of a policy" constitutes bad faith. Wolfe v. Allstate Property & Cas. Ins. Co., 790 F.3d 487, 498 (3d Cir. 2015) (citing Terletsky v. Prudential Property and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (citation omitted)). To establish a bad faith claim, the insured must show by clear and convincing evidence that: (1) the insurer did not have a reasonable basis for denying benefits under the policy, and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the insured's claim. Id. at 498 (citing Terletsky, 649 A.2d at 688). Evidence of an insurer's self-interest and ill-will is probative of the second Terletsky prong, but not required. Rancosky v. Washington Nat'l Ins. Co., __ A.3d __, 2017 WL 4296351, at *11 (Pa. 2017).

The MVFRL contains a similar provision permitting the award of exemplary damages when an insurer acts wantonly in denying first party benefits. 75 PA. CONS. STAT. § 1797(b)(4). The MVFRL mandates that automobile insurers provide medical benefits coverage "for reasonable and necessary medical treatment and

7

rehabilitative services" arising out of the maintenance or use of a motor vehicle. Hickey v. Allstate Property and Cas. Ins. Co., 722 F. Supp. 2d, 609, 615 (M.D. Pa. 2010) (citing 75 PA. CONS. STAT. § 1712). Section 1797 provides that an insurer may confirm the reasonableness and necessity of an insured's medical treatment by submitting the insured's medical bills to a peer review organization ("PRO"). 75 PA. CONS. STAT. § 1797(b)(1). If the PRO determines that treatment was medically necessary, the insurer must pay the outstanding amount plus interest. Id. § 1797(b)(5). An insured or medical provider may challenge in court an insurer's refusal to pay for medical treatment, "the reasonableness or necessity of which the insurer has not challenged before a PRO."[2] Id. § 1797(b)(4). Wanton conduct by the insurer permits recovery of treble damages to the injured party. Id.

The Third Circuit evaluated the potential conflict between Section 8371 and Section 1797 in Gemini Physical Therapy & Rehabilitation, Inc. v. State Farm Mutual Automobile Insurance Co., 40 F.3d 63 (3d Cir. 1994). The district court dismissed the insured's Section 8371 bad faith claim. Gemini, 40 F.3d at 65. The Third Circuit affirmed, finding persuasive the analysis of Barnum v. State Farm Mutual Automobile Insurance Company, 635 A.2d 155 (Pa. Super. Ct. 1993), rev'd in

---

[2] An insurer, insured, or medical provider may request reconsideration following a PRO's initial determination. Id. § 1797(b)(2). An insured is not required to seek reconsideration of an adverse PRO determination before pursuing judicial review under Section 1797(b)(4). Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto Ins. Co., 64 A.3d 1058, 1061 (Pa. 2013) (citing Terminato v. Pennsylvania Nat'l Ins. Co., 645 A.2d 1287, 1293 (Pa. 1994)).

part on other grounds, 652 A.2d 1319 (Pa. 1994).³ Gemini, 40 F.3d at 67. The Barnum court determined that the two statutes were "irreconcilable." Barnum, 635 A.2d at 159 (citing 1 PA. CONS. STAT. § 1933). The court stated that the specific provisions of Section 1797 providing for interest, attorney's fees, and treble damages "clearly are at variance with and in conflict with the general remedies set forth in [Section] 8371." Id. at 158. Section 1797 therefore acted as an exception to the general remedy for bad faith under Section 8371. Id. at 159. The Barnum court held that Section 1797 preempts Section 8371 in the context of claims for first party benefits under the MVFRL. Id. The Third Circuit in Gemini agreed that "the specific provisions of [Section] 1797 must be deemed an exception to the general remedy for bad faith contained in [Section] 8371," and predicted that the Pennsylvania Supreme Court would rule similarly on the issue. Gemini, 40 F.3d at 67.

Several district courts within the Third Circuit have interpreted Barnum and Gemini as affixing blanket preemption to all claims for first party benefits under the MVFRL.⁴ Perkins v. State Farm Ins. Co., 589 F. Supp. 2d 559, 564 & n.2 (M.D. Pa.

---

³ After the Third Circuit's decision, the Pennsylvania Supreme Court later reversed the superior court's decision in Barnum. The reversal was limited to the issue of whether an insured must request reconsideration under Section 1797(b)(2) before seeking judicial review under Section 1797(b)(4). The substantive rationale undergirding Gemini's holding thus remains sound and controls disposition of the matter *sub judice*.

⁴ The court notes with interest that district courts in this circuit have not applied a blanket preemption interpretation of Gemini and Barnum since 2006. See Cronin v. State Farm Mut. Auto. Ins. Co., No. 06-1081, 2006 WL 3098437, at *2 (M.D. Pa. Oct. 30, 2006).

9

2008) (collecting cases). A robust majority of courts have held that a Section 8371 claim is not preempted when an insurer's alleged malfeasance goes beyond the scope of Section 1797 or "is obviously not amenable to resolution by the procedures set forth in [S]ection 1797(b)." Stephano v. Tri-Arc Fin. Servs., Inc., No. 07-743, 2008 WL 625011, at *5 (M.D. Pa. Mar. 4, 2008) (quoting Seeger v. Allstate Ins. Co., 776 F. Supp. 986, 990 (M.D. Pa. 1991)); see also Urena v. Allstate Ins. Co., 2016 WL 1071557, at *5 (M.D. Pa. Mar. 14, 2016); Perkins, 589 F. Supp. 2d at 564 & n.3 (collecting cases). These allegations may include, *inter alia*, bad faith claims involving contract interpretation, an insurer's abuse or improper invocation of the PRO process, and disputes over causation. See, e.g., Urena, 2016 WL 1071557, at *8; Gibson v. Progressive Specialty Ins. Co., No. 15-1038, 2015 WL 2337294, at *3 (E.D. Pa. May 13, 2015); Perkins, 589 F. Supp. 2d at 566; Dougherty v. State Farm Mut. Auto. Ins. Co., No. 00-4734, 2002 WL 442107, at *5 (E.D. Pa. Feb. 7, 2002). Under the majority interpretation, Section 1797 is confined to claims challenging an insurer's determination of the reasonableness and necessity of an insured's medical treatment. Hickey, 722 F. Supp. 2d at 614.

This prevailing consensus emanates from the reasoning in Schwartz v. State Farm Insurance Co., No. 96-160, 1996 WL 189839 (E.D. Pa. Apr. 18, 1996). The plaintiff in Schwartz brought claims under Section 8371 for the insurer's alleged bad faith in using a biased PRO and use of the PRO process to determine causation of the insured's injuries. Id. at *1. The court acknowledged Gemini's holding that a Section 8371 claim cannot endure when the insured complains of denial of first party benefits, but it rejected the insurer's argument that assertions of abuse of the

10

PRO process fell within Section 1797's purview. Id. at *4. The Schwartz court stated that "[n]othing in Barnum or Gemini suggests that a bad faith insurance coverage claim under [Section] 8371 is barred by [Section] 1797 where the peer review process set out in [Section] 1797, namely to determine the propriety of treatment and charges therefore, is not actually followed." Id.

We agree with the *ratio decidendi* of Schwartz and the expanding number of cases adopting it. The *sine qua non* that triggers Section 1797 is a dispute over the reasonableness or necessity of medical treatment. Hickey, 722 F. Supp. 2d at 615; Stephano, 2008 WL 625011 at *8. Section 8371 bad faith claims remain cognizable when the basis of a benefits denial does not relate to the reasonableness and necessity of treatment, or when an insurer's conduct "is obviously not amenable to resolution by the procedures set forth in [S]ection 1797(b)."[5] Hickey, 722 F. Supp. 2d at 614; Stephano, 2008 WL 625011, at *5. This framework remains faithful to Gemini and complies with Pennsylvania's law of statutory construction by giving effect to both statutory provisions. See Schwartz, 1996 WL 189839, at *5, *8 (citing 1 PA. CONS. STAT. § 1933); see also Urena, 2016 WL 107557, at *5 (citing Perkins, 589 F. Supp. 2d at 566); Stephano, 2008 WL 625011, at *5.

B. **Application to Hack's Bad Faith Counterclaim**

The pertinent inquiry *sub judice* is whether the misconduct alleged by Hack in support of his bad faith counterclaim falls outside the scope of Section 1797. See

---

[5] An insurer need not utilize the PRO process to enjoy the protections of Section 1797, however. Hickey, 722 F. Supp. 2d at 615. Section 1797(b)(4) provides an insured a procedure to challenge an insurer's denial of benefits when the insurer does not utilize a PRO. 75 PA. CONS. STAT. § 1797(b)(4).

11

Urena, 2016 WL 1071557, at *6. The insurer's basis for denial is relevant to the extent that it contextualizes the insured's allegations.[6] See Hickey, 722 F. Supp. 2d at 615.

Courts routinely hold that allegations of failure to pay first party benefits, investigate claims, act in a reasonable time and in good faith, fairly evaluate coverage, explain decisions, and effectuate a prompt and fair resolution of the claim are merely challenges to the reasonableness and necessity of the medical treatment. See Urena, 2016 WL 1071557, at *7; see also Gibson, 2015 WL 2337294, at *3 (citing Hickey, 722 F. Supp. 2d at 614-15; Perkins, 589 F. Supp. 2d at 566); but see Stephano, 2008 WL 625011 at *6-8. Hack's allegations in subparagraphs 77 (a), (f), (g), (o), (p), (q), and (r) fall squarely within the scope of, and are preempted by, Section 1797. See Urena, 2016 WL 1071557 at *7 (collecting cases).

A number of Hack's allegations are not preempted by Section 1797. Subparagraph 77(d) asserts that Metropolitan failed to properly invoke the PRO process and does not appertain to the reasonableness or necessity of Hack's medical treatment. See id. at *5 (citing Gibson, 2015 WL 2337294, at *3). The allegations in subparagraphs 77(b), (c), and (m) challenge Metropolitan's failure to properly determine causation and likewise fall outside the scope of Section 1797. See id. (citing Gibson, 2015 WL 2337294, at *3). Hack contends in subparagraph 77(e) that

---

[6] Hack asserts that Metropolitan denied his claim for first party medical benefits. (See, e.g., Doc. 14 ¶¶ 74-75). It is unclear whether Metropolitan formally denied Hack's claim prior to commencing this litigation. (See Doc. 14 ¶¶ 60-66). Nevertheless, the complaint clearly sets forth the basis for Metropolitan's nonpayment of Hack's insurance claim. (See Doc. 1 ¶ 40).

Metropolitan withheld transcribed statements until the filing of the instant action, a claim "obviously not amenable to resolution by the procedures set forth in Section 1797." Stephano, 2008 WL 625011, at *5. Section 1797's procedures are equally ill-equipped to address subparagraphs 77(h) and (i) concerning Metropolitan's alleged self-interest and ill will. Emp'rs Mut. Cas. Co. v. Loos, 476 F. Supp. 2d 478, 490-91 (W.D. Pa. 2007) (citing Terletsky, 649 A.2d at 688). Subparagraph 77(n) cites Section 1171.5(10)(i), which provides that misrepresentation of contract provisions relating to coverages at issue constitutes unfair claim settlement or compromise practices. 40 PA. STAT. AND CONS. STAT. ANN. § 1171.5(10)(i). Challenges to contract interpretation fall outside the scope of Section 1797. Hickey, 722 F. Supp. 2d at 614. Consequently, the allegations in subparagraphs 77(b), (c), (d), (e), (h), (i), (m), and (n) are cognizable under Section 8371.

Hack's allegations in subparagraphs 77(j), (k), and (l) outline general claims of Metropolitan's failures in: (1) effectuating prompt settlement of claims in which Metropolitan's liability under the policy has become reasonably clear; (2) affirming or denying coverage within a reasonable time; and (3) explaining the basis for a denial of benefits. (Doc. 14 ¶ 77(j), (k), (l)). Such claims are typically categorized as challenges to the denial of benefits. See Urena, 2016 WL 1071557, at *7 (citing Gibson, 2015 WL 2337294, at *3; Hickey, 722 F. Supp. 2d at 614-15). Metropolitan's basis for denial in the instant case, however, is Hack's alleged fraud and misrepresentation as to the existence and cause of his injuries. (Doc. 1 ¶¶ 31-35). Metropolitan asserts that such fraud or misrepresentation triggers an exclusionary clause in Hack's policy. (See id. at ¶¶ 30-35). As discussed *supra*, allegations

13

regarding causation and contract interpretation fall outside the scope of Section 1797.  Urena, 2016 WL 1071557, at *5 (citing Gibson, 2015 WL 2337294, at *3); Hickey, 722 F. Supp. 2d at 614.  Subparagraphs 77(j), (k), and (l) survive Rule 12 scrutiny to the extent that they allege improper determinations of causation or challenge the interpretation of the insurance policy.

**IV.    Conclusion**

The court will grant in part and deny in part Metropolitan's motion.  (Doc. 18).  Subparagraphs 77(a), (f), (g), (o), (p), (q), and (r) will be dismissed as preempted by Section 1797.  Subparagraphs 77(b), (c), (d), (e), (h), (i), (m), and (n) fall outside the scope of Section 1797 and are cognizable under Section 8371.  Subparagraphs 77(j), (k), and (l) will be dismissed to the extent they challenge a denial of benefits, but survive to the extent they relate to determinations of causation or contract interpretation.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    February 28, 2018